UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
CASE NO. 3:18CV-847-CHB

_____

**COMPLAINT FOR DECLARATORY RELIEF**

_____

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY | PLAINTIFF |

v.

NECCO HOLDING COMPANY I, INC.

1404 Race Street
Suite 3200
Cincinnati, OH 45202

    Serve:  Dinsmore Agent Co.
                Attention: Dan Earl
                314 West Main St.
                Frankfort, KY 40601

And

NECCO OPERATING COMPANY I, LLC

1404 Race Street
Suite 3200
Cincinnati, OH 45202

    Serve:  Dinsmore Agent Co.
                Attention: Dan Earl
                314 West Main St.
                Frankfort, KY 40601

And

NECCO SE, LLC

1404 Race Street
Suite 3200

Cincinnati, OH 45202

    Serve:  Dinsmore Agent Co.
              Attention: Dan Earl
              314 West Main St.
              Frankfort, KY 40601

And

Necco, LLC

PO Box 568
South Point, OH 45680

    Serve:  Dinsmore Agent Co.
              Attention: Dan Earl
              314 West Main St.
              Frankfort, KY 40601

And

Alton Cannon, as Administrator of the Estate of Hunter Ray Payton, a minor

        Serve:  Hon. Alton Cannon
                PO Box 427
                Leitchfield, KY 42755

And

Billy Embry-Martin

308 Black Ravens Court
Elizabethtown, KY 42701

        Serve: Billy Embry-Martin
               308 Black Ravens Court
               Elizabethtown, KY 42701

And

Travis Embry-Martin

308 Black Ravens Court
Elizabethtown, KY 42701

Serve: Travis Embry-Martin                                                              **Defendants**
       308 Black Ravens Court
       Elizabethtown, KY 42701

Plaintiff, Philadelphia Indemnity Insurance Company ("Philadelphia"), makes this Complaint seeking declaratory relief against defendants Necco Holding Company, Inc.; Necco Operating Company I, LLC; Necco SE, LLC; Necco, LLC (referred to collectively as the "Necco Defendants"); Alton Cannon as Administrator of the Estate of Hunter Ray Payton, a minor ("Cannon"); Billy Embry-Martin; and Travis Embry-Martin. For its Complaint, Philadelphia states the following facts and allegations:

### Nature of the Action

1. Philadelphia brings this action pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, for a declaratory judgment regarding its rights and obligations under its Commercial Lines Policy Number PHPK1054204 (the "Policy"). A true and accurate copy of the Policy is attached as PHI Exhibit A, and its terms are incorporated into this Complaint as if set forth fully within it.

2. Philadelphia specifically seeks a declaration of rights it may have and obligations it may owe related to a lawsuit filed in the Commonwealth of Kentucky, Hardin Circuit Court, Case Number 18-CI-00789, styled *Alton Cannon as the Administrator of the Estate of Hunter Ray Payton, a minor v. Billy Embry-Martin; Travis Embry-Martin; Necco Holding Company I, Inc.; Necco Operating Company I, LLC; Necco SE, LLC; and Necco, LLC* (the "Cannon Lawsuit"). A copy of the Cannon Lawsuit is attached as PHI Exhibit B. Philadelphia seeks a judgment declaring, among other things, that it owes no duty of defense to the defendants in the Cannon Lawsuit.

### The Parties

3. Plaintiff Philadelphia is a Pennsylvania corporation, with its principal place of business at One Bala Plaza, Ste. 100, Bala Cynwyd, PA 19004.

4. Defendant, Necco Holding Company I, Inc., ("Necco Holding") is a Kentucky Corporation with its principal office located at 1404 Race Street, Suite 3200, Cincinnati, OH 45202. It is a defendant in the Cannon Lawsuit.

5. Defendant, Necco Operating Company I, LLC, ("Necco Operating") is a Foreign Limited Liability Company organized in the State of Delaware doing business in the Commonwealth of Kentucky. Its principal office is located at 1404 Race Street, Suite 302, Cincinnati, OH 45202. It is a defendant in the Cannon Lawsuit.

6. Defendant, Necco SE, LLC, ("Necco SE") is a Kentucky Limited Liability Company with its principal office located at 1404 Race St., Suite 302, Cincinnati, OH 45202. It is a defendant in the Cannon Lawsuit.

7. Defendant, Necco, LLC, ("Necco") is a Foreign Limited Liability Company organized in the State of West Virginia doing business in the Commonwealth of Kentucky. Its principal office is located at P.O. Box 568, South Point, Ohio, 45680. It is a defendant in the Cannon Lawsuit.

8. One or all of the Necco Defendants contracts with the Commonwealth of Kentucky to place children in foster homes.

9. Defendant, Alton Cannon, has been duly appointed by the Grayson County Probate Court as the Administrator of the Estate of Hunter Ray Payton. Cannon is the Plaintiff in the Cannon Lawsuit.

10. Defendant, Billy Embry-Martin, is an individual residing in the Commonwealth of Kentucky whose principal residence is 308 Black Ravens Court, Elizabethtown, Kentucky 42701. He is a defendant in the Cannon Lawsuit.

11. Defendant, Travis Embry-Martin, is an individual residing in the Commonwealth of Kentucky whose principal residence is 308 Black Ravens Court, Elizabethtown, Kentucky 42701. He is a defendant in the Cannon Lawsuit.

## Jurisdiction and Venue

12. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). Complete diversity of citizenship exists between the plaintiff and the defendants, and the

amount in controversy is more $75,000, as Philadelphia's policy limits exceed that amount, exclusive of interest and costs. The Court has personal jurisdiction over the defendants.

13. Venue is proper under 28 U.S.C. § 1391, as defendants Cannon, Billy Embry-Martin and Travis Embry-Martin reside in this district, the Necco Defendants conduct business within the Commonwealth of Kentucky and in this district and are subject to this Court's jurisdiction, and most of the events from which this claim arises occurred in this district.

14. An actual controversy exists between the parties within the meaning of 28 U.S.C. §2201.

## FACTUAL ALLEGATIONS

### The Death of Hunter Payton

15. Cannon filed the Cannon Lawsuit on May 11, 2018. All defendants have answered the Cannon Lawsuit. As of the time this action was filed limited discovery has been taken in the Cannon Lawsuit.

16. The Cannon Lawsuit pleads a wrongful death claim on behalf of the Estate of Hunter Ray Payton ("Hunter"), who was four years old at the time of his death on May 8, 2017. (PHI Ex. B, ¶9, p. 003).

17. Cannon alleges that Hunter, and his two siblings, were placed in foster care by the Commonwealth of Kentucky, Cabinet for Health and Family Services (the "Cabinet"), and by the Necco Defendants. (*Id.*, ¶10, p. 003-004).

18. Cannon alleges that the Cabinet and the Necco defendants placed Hunter and his siblings in the care of Billy Embry-Martin and Travis Embry-Martin.

19. Cannon alleges that both Billy Embry-Martin and Travis Embry-Martin physically abused and punished Hunter, that each knew of the abuse committed by himself and by his partner, and that each failed to act to prevent further abuse. (*Id.*, ¶¶12-13, p. 004).

20. On January 25, 2018, Billy Embry-Martin was indicted in the Hardin Circuit Court. *Commonwealth v. Embry-Martin*, 18-CR-0048. He is charged with the murder of Hunter in violation of KRS 507.020. His trial, originally set for December 3, 2018, has been continued until May 2019.

### ALLEGATIONS AND CLAIMS AGAINST THE NECCO DEFENDANTS AND THE EMBRY-MARTINS IN THE CANNON LAWSUIT

21. Cannon alleges that, on May 8, 2017, while in the care of Billy Embry-Martin and Travis Embry-Martin, Hunter was injured, and died from those injuries on May 10, 2017. (PHI Ex. B, ¶14, p. 004).

22. The Cannon Lawsuit alleges that the Necco Defendants:

   a. collectively or individually placed Hunter and his siblings in the care of Billy Embry-Martin and Travis Embry-Martin, and

   b. breached statutory and regulatory duties, enacted to prevent abuse and injury to children placed in foster care, to screen, review, prepare, and otherwise provide that Hunter was placed in a home where the foster parents complied with statutes and regulations regulating their care and treatment of foster children.

(*Id.*, ¶¶ 15-18, p. 004-005).

23. The Cannon Lawsuit states the following legal claims:

   a. Common law assault and battery against Billy Embry-Martin, for intentionally placing Hunter in imminent fear of bodily harm, and intentionally causing harmful and offensive contact by intentionally causing the injuries that led to Hunter's death. (*Id.*, ¶¶29-31, p. 007).

   b. Murder against Billy Embry-Martin, for violating KRS 507.020, giving Hunter's estate a private civil claim pursuant to KRS 446.070. (*Id.*, ¶¶32-35, pp. 007-008). Under KRS 507.020, a person is guilty of murder if he intends to cause the death of another person, or wantonly engages in conduct that creates a grave risk of death, thereby causing the death of another person. Kentucky's penal code defines "wanton" to mean that a person is "aware of and consciously disregards a substantial and unjustifiable risk" that circumstances exist that will lead to a certain result. KRS 507.050.

    c. Negligence, negligence per se, and gross negligence against Billy Embry-Martin and Travis Embry-Martin, alleging that each were in gross violation of their statutory and regulatory duties when Hunter was injured, and that those duties included (but were not limited to) protecting Hunter from further abuse despite knowing of prior incidents of corporal punishment and abuse committed by himself or his partner; providing a safe home environment; and protecting Hunter from intentional injury by the other partner. (*Id.*, ¶19, p. 005).

    d. That the Necco Defendants were in gross violation of their mandatory statutory and regulatory duties, making them negligent, negligent per se, and grossly negligent. (*Id.*, ¶20, p. 005).

    e. That the Necco Defendants were vicariously liable to the Estate for the negligence, negligence per se, and gross negligence of any of their agents, employees, or "subordinate entities" contributing to Hunter's injuries. (*Id.*, ¶27, p. 0006).

    f. That as a result of their conduct, Billy Embry-Martin, Travis Embry-Martin, and the Necco Defendants caused or are liable for the injuries to Hunter and damages to his estate, including those available for wrongful death under KRS 411.130, for personal injury under KRS 411.133, and punitive damages. (*Id.*, ¶¶22, 25, 28, 30-31, and 36-38).

## THE POLICY

24. Philadelphia relies upon all provisions of its Policy as if they were completely set forth in this Complaint.

25. The Policy was issued to (among other named insureds) Necco Holding Company I, Inc.; Necco Operating Company I, LLC; Necco SE, Inc.; and Necco, LLC for the period from September 1, 2016 through September 1, 2017. (PHI Ex. A., p. 0001, 0027, 0721-0723, 0746-0747, and 0802-0806). The Policy contains several coverage parts. The coverage parts relevant to this matter are the Commercial General Liability Coverage Part ("CGL," *Id.*, pp.

0267-0339); the Human Services Organization Professional Liability Coverage Part ("HSOP" *Id.*, pp. 0421-0430); the "Sexual or Physical Abuse or Molestation Vicarious Liability Coverage Form – Occurrence" ("SPAM") (*Id.*, pp. 0431-0436); and a Commercial Umbrella Liability Insurance Policy ("Umbrella") (*Id.*, pp. 0740-0806).

26. The CGL Declarations state that Philadelphia's limit of liability is $1,000,000 per occurrence ($3,000,000) aggregate, and $5,000 for medical expenses for any one person. (*Id.*, p. 0067).

27. The HSOP Declarations state that Philadelphia's limit of liability is $1,000,000 for "each professional incident," with a $3,000,000 aggregate limit. (*Id.*, p. 0114).

28. The SPAM sets the limit for "each abusive conduct" at $1,000,000 with an aggregate limit of $1,000,000. (*Id.,* p. 116).

29. It is Philadelphia's information and belief that the Necco Defendants and the Embry-Martins may dispute its coverage position set forth below.

30. It is Philadelphia's information and belief that Cannon may dispute its coverage position. He is named as a defendant so that he may assert any interest the Estate of Hunter Payton may have in the proceeds of the Policy.

## PHILADELPHIA'S COVERAGE POSITION
### Coverage Position under the CGL

31. Under the CGL, Coverage A, Philadelphia agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." CGL Coverage Form, Section I.1.a. (*Id.*, p. 0267). The insurance applies to 'bodily injury' or 'property damage' that is "caused by an 'occurrence….'" CGL Coverage Form, Section I.1.b.(1) (*Id.*). The term "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." CGL Coverage Form, Section V.13, (*Id.*, p. 0281).

32. Under Coverage A of the CGL, Philadelphia also undertakes the duty to defend an insured for any suit seeking damages for "bodily injury" or "property damage," but "will

have no duty to defend the insured against any 'suit' seeking damages … to which this insurance does not apply." CGL Coverage Form, Section I.1.a., (*Id.,* pp. 0267).

33. The insured whom the CGL promises to defend and indemnify as described in Section I.1.a. is the named insured, as well as "volunteer workers." CGL Coverage Form, Section II.2.a. (*Id.*, p. 0276).

    a. The CGL defines a "volunteer worker" as "a person who is not [the insured's] 'employee', and who donates his or her work and acts at the direction of and within the scope of duties determined by [the insured], and is not paid a fee, salary or other compensation by [the insured] or anyone else for their work performed for [the insured]." CGL Coverage Form, Section V.20. (*Id.*, p. 0282).

    b. A person who meets the definition of "volunteer worker" may be an insured, "but only for acts within the scope of their employment by [the insured] or while performing duties related to the conduct of [the insured's] business." CGL Coverage Form, Section II.2.a. (*Id.*, p. 0276).

34. The Necco Defendants are insureds as the CGL defines that term, and Philadelphia is defending the Necco Defendants in the Cannon Lawsuit under reservation of rights.

35. Philadelphia also is defending Billy Embry-Martin and Travis Embry-Martin under reservation of rights. To the extent that they or any other party may argue that the Embry-Martins are "volunteer workers," it is Philadelphia's information and belief that they:

    a. Did not donate their work to the Necco Defendants; or in the alternative

    b. Acted against the direction of the Necco Defendants and outside the scope of their duties determined by the Necco Defendants; or, in the alternative

    c. Are paid compensation for their work as foster parents.

36. Philadelphia does not intend for its CGL to provide liability coverage to all of the foster parents with whom the Necco Defendants place children, and did not underwrite the CGL on that basis. The Necco Defendants place children in foster homes in Kentucky, Georgia, Ohio, and West Virginia. Upon information and belief, the Necco Defendants currently have scores, if not hundreds, of foster children placed in those four states. In

Kentucky alone, nearly 1,000 children were placed in foster care last year (although not all of them by Necco).[1] If Philadelphia must underwrite and price its CGL on the basis that each of the foster parents with whom it places a child will be considered a "volunteer worker," and an additional insured under its CGL, the cost of its CGL to such groups would be considerably more expensive.

37. Upon information and belief, the named insureds who are the Necco Defendants in this case do not expect that the CGL provides coverage to the foster parents with whom it places children.

38. Under the law of Kentucky, occurrence-based liability insurance does not apply to losses that are not fortuitous. Philadelphia is entitled to judgment that it owes no defense or indemnity to Billy Embry-Martin or Travis Embry-Martin under the CGL because the Cannon Lawsuit alleges that their intentional and knowing conduct resulted in the death of Hunter Payton.

39. Under express exclusions, the insurance described by the CGL does not apply to:

   a. "'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured." CGL Coverage Form, Section I, Coverage A, 2.a., (*Id.*, pp. 0268).

   b. "Bodily injury" to a child of a "volunteer worker" as a consequence of performing duties related to the conduct of the insured's business. CGL Coverage Form, Section II.2.a.(1)(b), (*Id.*, pp. 0276).

Although an insurer need not rely on exclusions when the alleged loss is not fortuitous, these exclusions furnish an independent basis for a finding that the insurance does not apply to the claims against Billy Embry-Martin or Travis Embry-Martin, and Philadelphia is entitled to a declaration so finding.

40. Under an express exclusion, the CGL excludes liability for "bodily injury" arising out of actual abuse. CGL Coverage Part, Abuse or Molestation Exclusion, Endorsement CG 21 46 07 98 (*Id.,* p. 0309). Philadelphia is entitled to a declaration that, under this exclusion,

---

[1] Commonwealth of Kentucky, Cabinet for Health and Family Services, Statewide Foster Care FACTS, July 2018, at https://chfs.ky.gov/agencies/dcbs/dpp/Documents/Statewide%20-%20Foster%20Care%20Facts%20Sheets.pdf, last accessed 7/16/18.

the CGL does not apply to the claims against the Necco Defendants, or against the Embry-Martins.

41. Endorsement CG 21 46 07 98 also excludes claims related to actual abuse where those claims arise out of negligent employment, retention, investigation, supervision, or reporting (or failing to report) abuse. (*Id.*). Philadelphia is entitled to a declaration that, under this exclusion, the CGL does not apply to the claims against the Necco Defendants.

### Coverage Position under the HSOP

42. The HSOP agrees to pay sums that the insured becomes legally obligated to pay as damages arising out of a "'professional incident' in the course of performing professional services for, or on behalf, of your human services organization to which this insurance applies." HSOP Liability Coverage Form, Section I.A.1. (*Id.*, p. 0421).

43. The insurance applies only if the claim arises out of a "professional incident." *Id.*

44. "Professional incident" is defined as "any actual or alleged negligent Act, Error, or Omission in the actual rendering of professional services to others, including counseling services, in your capacity as a human services organization." HSOP Liability Coverage Form, Section V.P. (*Id.*, p. 0429). Because the Complaint alleges that one or both of the Embry-Martins acted knowingly and intentionally, resulting in the death of Hunter Payton, Philadelphia is entitled to a declaration that their conduct does not meet the definition of a "professional incident."

45. The insured whom the HSOP promises to defend and indemnify is the named insured, as well as volunteers. HSOP Liability Coverage Form, Section II.B.3. (*Id.*, p. 0424). Under the HSOP, coverage is provided for volunteers "only for acts within the scope of their duties related to the conduct of [the insured's] organization." *Id.*

46. The Necco Defendants are "insureds" as the HSOP defines that term, and Philadelphia is defending the Necco Defendants in the Cannon Lawsuit under reservation of rights.

47. Philadelphia also is defending Billy Embry-Martin and Travis Embry-Martin under reservation of rights. To the extent that they or any other party may argue that the Embry-Martins are volunteers it is Philadelphia's information and belief they are not.

48. Philadelphia does not intend for its HSOP to provide liability coverage to all of the foster parents with whom the Necco Defendants place children, and did not underwrite the HSOP on that basis. The Necco Defendants place children in foster homes in Kentucky, Georgia, Ohio, and West Virginia. If Philadelphia must underwrite and price its HSOP on the basis that each of the foster parents with whom it places a child will be considered a "volunteer," and an additional insured under its HSOP, the cost of its HSOP to such groups would be considerably more expensive.

49. Upon information and belief, the named insureds who are the Necco Defendants in this case do not expect that the HSOP provides coverage to the foster parents with whom it places children.

50. Under an express exclusion, the HSOP insurance does not apply to losses expected or intended from the standpoint of the insured. HSOP Liability Coverage Form, Section I.B.1. (*Id.*, p. 0421). Because the Cannon Lawsuit alleges that both of the Embry-Martins acted knowingly and intentionally, resulting in the death of Hunter Payton, Philadelphia is entitled to a declaration that their conduct precludes Philadelphia's liability for the loss.

51. Under an express exclusion, the HSOP insurance does not apply to losses "arising out of any criminal, dishonest, fraudulent, or malicious act or omission." HSOP Liability Coverage Form, Section I.B.20 (*Id.*, p. 0423). The exclusion does not apply to anyone who did not participate in such an act, or who remained passive after having personal knowledge of such an act. As the facts are alleged in the Lawsuit, neither of these exceptions applies, and Philadelphia is entitled to a declaration that criminal, dishonest, fraudulent, or malicious acts or omissions by the Embry-Martins precludes coverage for one or both of them under this exclusion.

52. Under an express exclusion, the HSOP insurance does not apply to any loss arising out of "the actual or threatened physical or sexual abuse or molestation by anyone of any person while in the care, custody, or control of any insured." HSOP Liability Coverage

Form, Section I.B.23.a. (*Id.*). Because the Cannon Lawsuit alleges that Hunter Payton's death resulted from actual or threatened physical abuse, Philadelphia is entitled to a declaration that the HSOP does not apply to this loss.

53. Under an express exclusion, the HSOP does not apply to claims for the negligent employment, investigation, supervision, reporting to (or failure to report to) the authorities, or retention of a person for whom any insured is (or ever was) legally responsible, and whose conduct would be excluded because of actual or threatened physical or sexual abuse. HSOP Liability Coverage Form, Section I.B.23.b. (*Id.*). To the extent that the Cannon Lawsuit alleges that the Necco Defendants are liable for such negligence, Philadelphia is entitled to a declaration that the Policy does not provide defense or indemnity for such claims.

## Coverage Position under the SPAM

54. The SPAM agrees to pay sums that the insured is legally obligated to pay as damages because of bodily injury, if the insured is alleged to be liable for another person's "abusive conduct." SPAM Vicarious Liability Coverage Form, Section I.1.a. (*Id.*, p. 0431).

55. Under the SPAM Insuring Agreement, to trigger coverage, the insured's liability for another person's "abusive conduct" must result from the negligent employment, selection, investigation, supervision, reporting (or failure to report) to the authorities, or retention of any employee, volunteer, or other person for whom the insured is (or ever was) legally responsible. SPAM Vicarious Liability Coverage Form, Section I.a.1. (*Id.*).

56. The insured whom the SPAM promises to defend and indemnify is the named insured, as well as "volunteers." SPAM Vicarious Liability Coverage Form, Section II.2.c. (*Id.*, p. 0432). Under the SPAM, coverage is provided for volunteers "only for liability arising within the scope of their volunteer duties related to the conduct of [the insured's] organization." *Id.*

57. The Necco Defendants are insureds as the SPAM defines that term, and Philadelphia is defending the Necco Defendants in the Cannon Lawsuit under reservation of rights.

58. Philadelphia also is defending Billy Embry-Martin and Travis Embry-Martin under reservation of rights. To the extent that they or any other party may argue that the Embry-Martins are "volunteers," it is Philadelphia's information and belief that they:

    a. Did not donate their work to the Necco Defendants; or in the alternative
    b. Acted against the direction of the Necco Defendants and outside the scope of their duties determined by the Necco Defendants; or, in the alternative
    c. Are paid compensation for their work as foster parents.

59. Philadelphia does not intend for its SPAM to provide liability coverage to all of the foster parents with whom the Necco Defendants place children, and did not underwrite the SPAM on that basis. If Philadelphia must underwrite and price its SPAM on the basis that each of the foster parents with whom it places a child will be considered a "volunteer," and an additional insured under its SPAM, the cost of its SPAM to such groups would be considerably more expensive.

60. Upon information and belief, the named insureds who are the Necco Defendants in this case do not expect that the SPAM provides coverage to the foster parents with whom it places children.

61. The Cannon Lawsuit does not allege that either of the Embry-Martins is liable for the other's "abusive conduct," but that each of them is independently liable for their own abusive conduct, and their own breach of duty. Therefore, Philadelphia is entitled to a declaration that the allegations against Billy Embry-Martin and Travis Embry-Martin do not fall within the insuring agreement of the SPAM.

### Coverage Position under the Umbrella

62. The Umbrella is intended to provide professional liability coverage, and follows the form of the HSOP (*Id.*, Professional Liability Follow Form Endorsement PI-CXL-003 (09/12), p. 0783), except that, where the provisions of the HSOP and the Umbrella conflict, the provisions of the Umbrella apply. (*Id.*). For the same reasons that the HSOP does not cover the losses alleged by the Complaint, the Umbrella also does not provide coverage.

63. The Umbrella agrees to pay "ultimate net loss" that exceeds the "applicable underlying limit" because of "bodily injury." (*Id.*, Umbrella, Section I.1., p. 0754). The

"bodily injury" must arise out of an "occurrence." (*Id.*). Thus, the Umbrella requires a fortuitous loss, and because no fortuitous loss is alleged against Billy Embry-Martin and Travis Embry-Martin within the Complaint, Philadelphia is entitled to judgment that it owes no duty to defend or indemnify them from the allegations of the Complaint.

64. The Umbrella includes as insureds (*Id.*, Umbrella, Section II.3.c.(1), pp. 0767-0768) "volunteer workers," but only while they are "performing duties related to the conduct" of the named insured's business." A "volunteer worker" is defined as "a person who is not your 'employee,' and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed by you." (*Id.*, Umbrella, Section V.26, p. 0781). Philadelphia asserts that Billy Embry-Martin and Travis Embry-Martin are not "volunteer workers" as defined by the Policy, because it is Philadelphia's information and belief that they:

   a. Did not donate their work to the Necco Defendants; or in the alternative
   b. Acted against the direction of the Necco Defendants and outside the scope of their duties determined by the Necco Defendants; or, in the alternative
   c. Are paid compensation for their work as foster parents.

65. Philadelphia does not intend for its SPAM to provide liability coverage to all of the foster parents with whom the Necco Defendants place children, and did not underwrite the SPAM on that basis. If Philadelphia must underwrite and price its SPAM on the basis that each of the foster parents with whom it places a child will be considered a "volunteer," and an additional insured under its SPAM, the cost of its SPAM to such groups would be considerably more expensive.

66. The Umbrella states that it does not apply to "bodily injury" that is expected or intended from the standpoint of the insured. (*Id.*, Umbrella, Section I.3.a., p. 0757). To the extent that Billy Embry-Martin and Travis Embry-Martin may be found to be insureds under the Policy, the Complaint alleges that their conduct was expected or intended, and thus it is excluded under the Umbrella.

67. The limits of the Umbrella are modified by a Sexual or Physical Abuse or Molestation Vicarious Liability Coverage Form Sublimit (PI-CXL-043 (03/14), p. 0791). Under this endorsement, the Umbrella is intended to include the SPAM form, but with limits of $1,000,000 for "Each 'Abusive Conduct,'" and $1,000,000 aggregate. To the extent the SPAM provides coverage to any insured in this case, this endorsement limits the additional coverage provided by the Umbrella.

Wherefore, Philadelphia respectfully requests:

1. That the Court declare that Philadelphia has no further duty to defend Billy Embry-Martin or Travis Embry-Martin in the Cannon Lawsuit;

2. That the Court declare that Philadelphia has no duty to indemnify Billy Embry-Martin or Travis Embry-Martin in the Cannon Lawsuit;

3. That the Court declare that the CGL and the HSOP do not provide coverage to the Necco Defendants for the allegations made against them in the Cannon Lawsuit;

4. That the Court declare that the Umbrella offers no additional professional liability coverage for the same reasons that the HSOP offers no coverage;

5. That the Court declare that, to the extent the SPAM offers coverage to any insured, the additional coverage of the Umbrella is limited to $1,000,000.

6. That the Court grant all other relief to Philadelphia that it may be entitled to in law or equity.

Respectfully submitted,

/s/ Barry Miller
_____
Barry Miller
Mazanec, Raskin & Ryder Co., L.P.A.
230 Lexington Green Circle, Suite 605
Lexington, KY 40503
(859) 899-8499
(859) 899-8498 (facsimile)
bmiller@mrrlaw.com